No. 2498.

GULF CITY STREET RAILWAY AND REAL ESTATE COMPANY
*v.* THE CITY OF GALVESTON.

1. CITY ORDINANCE. — The city of Galveston contracted with a street railway company, by ordinance, to use, for the purposes of a street railway, certain designated streets. A section of the ordinance was as follows: "Sec. 3. The grantees named and their successors shall at all times keep the road bed of said railway in good repair and upon a level with the street, and when a street is raised, or lowered the company or grantee shall raise and lower their track and road bed to conform thereto, and shall at all times pay all expenses of filling, grading, lowering, paving or otherwise changing, improving and maintaining the street between their tracks; and shall also construct and keep in good repair all cross culverts wherever the same may be required by the city council under their rail track, said culverts to extend across the street from sidewalk to sidewalk, all of which work shall be done subject to the approval and under the direction of the committee on streets and alleys and city engineer, or other proper authority of said city; and whenever said grantees or their successors shall fail to construct and keep in order the culverts, tracks and road bed, as required by this ordinance, the city shall have the right to cause them to be constructed or put in proper condition and repair at the expense of said grantees or their successors, and in the event of their refusal to pay the same, the city may sue for the amount and forfeit this franchise." Under that ordinance the city sued the railway company to recover the value of so much of improvements made by the city in filling and grading that part of the street which was occupied by the railway company's track constructed upon it after the improvement. *Held,* that the city having no right to recover from the company, at the time the street was improved by the city a part of the cost of such improvement, the subsequent use of the street by the railway company did not confer the right.

APPEAL from Galveston.   Tried below before the Hon. William H. Stewart.

*James B. Stubbs*, for the appellant.

*George P. Finlay*, for appellee:  On his proposition that the right to build, operate and maintain a street railway over Post-office street was granted upon the conditions named in section three of the ordinances, and the conditions attached to Postoffice street *eo instanti,* whether the railway company built their railway before or after the street was filled, graded and paved, they cited City Charter, sections 34, 35, 127; Brooklyn v. Brooklyn City Railway, 7 American Reports, 469 (47 N. Y., 475); Columbus v. Columbus Street Railway, 10 Western Reporter, 436, law edition; same case, Ohio, April, 1887; People v. Chicago Street Railway, Western Reporter, 517, law edition (118 Ill., 113, October, 1886); Railway v. Philadelphia, 2 Central Reporter, 611, law edition; Dillon on Municipal Corporations, sections 706, 721, and note; 2 Wood on Railways, section 273, page 985.

STAYTON, ASSOCIATE JUSTICE.   The city of Galveston granted to Francis D. Allan and his associates the right to use certain streets and parts of streets for a street railway.  The appellant is alleged to have acquired whatever rights Allan and his associates acquired through the ordinances making the grant, and to have become responsible for the performance of any duties or the payment of any sum of money Allan and his associates would be responsible for under the terms of the ordinance, and there is no controversy as to this.

The first contract between Allan and his associates and the city was through an ordinance of date November 5, 1883; but the one on which this action is based is of date March 4, 1884, and amendatory of the former ordinance.  The ordinance entitled Francis D. Allan and associates, and such person or corporation as may have succeeded to their rights, to use that part of Postoffice street between Twentieth and Twenty-fourth streets for a street railway.  In the months of May and June, 1886, the city caused to be filled, graded and paved, at the expense of itself and property owners on each side of Postoffice street, so much thereof as is situated between Twentieth and Twenty-third streets.  At that time no street railway had been constructed on that street, but subsequently the appellant con-

structed a double track street railway on so much of it as had been thus improved by the city. This action was brought by the city to compel the appellant to pay for so much of the improvement made on that street as is occupied by its railway tracks.

The ordinance under which this claim is made was made a part of the petition, and so much of it as affects the question of the appellant's liability is found in its third section, which is as follows:

"Section 3. The grantees named and their successors shall at all times keep the road bed of said railway in good repair, and upon a level with the street, and when a street is raised or lowered, the company or grantees shall raise or lower their track and road bed to conform thereto, and shall at all times pay all expenses of filling, grading, lowering, paving or otherwise changing, improving and maintaining the street between their tracks; and shall also construct and keep in good repair all cross culverts wherever the same may be required by the city council, under their rail track, said culverts to extend across the street from sidewalk to sidewalk—all of which work shall be done subject to the approval and under the direction of the committee on streets and alleys and city engineer, or other proper authority of said city, and whenever said grantees or their successors shall fail to construct and keep in order the culverts, tracks and road bed, as required by this ordinance, the city shall have the right to cause them to be constructed or put in proper condition and repair, at the expense of said grantees or their successors, and in the event of their refusal to pay the same, the city may sue for the amount and forfeit this franchise."

The facts stated being alleged in the petition, demurrers general and special were presented and overruled, and on proof of the facts alleged and an agreement as to the cost of the improvements on that part of the street subsequently occupied by the railway tracks, a judgment was rendered in favor of the city for two thousand six hundred dollars. The special demurrer, which will be considered, was as follows: "The petition shows that the alleged work of filling, grading and paving Postoffice street was done by plaintiff before defendant entered upon or constructed its railway on said street, and the ordinances made part of plaintiff's petition do not bind defendant to pay for any

such improvement, except on streets occupied by its track at the time the improvements are made."

The ordinances looked to the future construction of railway tracks on the street named, and the third section must be construed in the light of that fact. It was intended to regulate the manner in which the rights given by preceding sections should be exercised, with a view to render the use of streets by tracks as small an impediment as practicable to their ordinary uses; to explicitly reserve to the city the right, on failure of the railway company to so preserve the streets; the power to put such parts as might be covered by tracks in good condition for common use as might it do were no right given to the railway to use a street, and this at the cost of the railway company. The language that "the grantees named and their successors shall at all times keep the road bed of said railway in good repair and upon a line with the street," necessarily implies that there shall be a road bed, which may be repaired, and which may be kept upon a line with the street, before the duty to do these things can arise.

Until the duty became fixed, in the nature of things, there could be no obligation. "To repair" means to restore to a sound or good state after decay, injury, dilapidation or partial destruction. (Webster.) "In good repair" means in such state of restoration. "When a street is raised or lowered the company or grantees shall raise or lower their track and road bed to conform thereto." This further illustrates that the duty of the company has relation only to a track or road bed existing at the time the city may deem it necessary to raise or lower the street; to an existing track or road bed on the street to be raised or lowered, and not to a place where, under the ordinance, these at some future time might be placed. "Shall at all times pay all expenses of filling, grading, lowering, paving or otherwise changing, improving and maintaining the street *between their tracks.*" There can be no street between the tracks, if on the street no tracks have been laid. They "shall also construct and keep in good repair all cross culverts, wherever the same may be required by the city council *under their rail track.*" This clearly would not impose on the company the duty to construct and keep in good repair cross culverts on any part of the streets which the company were given the right to use, prior to the time a track was laid. The words "shall at all times keep" necessarily have relation to the thing to be kept, and "all

times," in this connection, can not be given effect until the thing to which they relate has an existence. The same is true of the words "shall at all times pay."

The language of this section of the ordinance shows that every duty imposed on the company dates from and is based on the fact that it is occupying, for the purposes permitted by the ordinance, some street named in it; and, until a street is so used and there is a failure on the part of the company thereafter to comply with the ordinance, the city has no right to improve a street and collect a part of the cost from the company, simply because it may, after the street is improved, place a track upon it.

The ordinance provides the manner in which track, road bed and culverts must be constructed, and that if the "grantees or their successors shall fail to construct and keep in order the culverts, tracks and road bed *as required by this ordinance,* the city shall have the right to cause them to be constructed or put in proper condition and repair at the expense of said grantees or their successors." This simply means if the company shall construct a railway on any of the streets named, but not in the manner required by the ordinance, that the city may so construct it or repair it as to make it comply with the ordinance, or may construct or repair culverts required by the city council under an existing track.

The grant was made on condition that certain parts of the street railway should be put in operation within given periods, but there is nothing in the ordinance which gave the city the right to construct a railway on any street at the expense of the company if it declined or had failed to construct at all on that street; or that gave the city the right to recover from the company a part of the cost of improving a street having no railway on it at the time the improvement was made, because an improvement made by the city might render the subsequnt construction less expensive than it would have been to the company had the city not improved the street. The city having no right to recover from the company at the time it improved Postoffice street a part of the cost of that improvement—the subsequent use of the street by the railway company did not give the right.

In the case of Columbus v. Columbus Street Railroad Company (10 W. R., 436), a contract similar to that before us was considered, but in that case the railway was constructed in the

street prior to the time the city required the street to be improved, and the railway company having failed to improve that part of the street between the rails of its track after being notified to do so, the city made the necessary improvement and was held entitled to recover its cost.

We are of the opinion that the demurrers should have been sustained, and as there is no reason to believe that a cause of action exists, the judgment of the court below will be reversed and the cause dismissed.

*Reversed and dismissed.*

Opinion delivered February 10, 1888.