LOMBARD WATER-WHEEL GOVERNOR COMPANY

*vs.* .

GREAT NORTHERN PAPER· COMPANY.

GREAT NORTHERN PAPER COMPANY

*vs.*

LOMBARD WATER-WHEEL GOVERNOR COMPANY.

Cumberland. Opinion January 1, 1906.

*Sales. Delivery. Warranties. Independent Agreement. Condition Precedent. Installing Machinery. Error of Judgment. Non-Liability of Principal. Assumption of Risk of Failure.*

Under a contract for the sale of personal property the title passes to the purchaser upon delivery by the vendor to a common carrier authorized to receive it.

A stipulation that a competent man is to be furnished by the manufacturer to install machinery sold to a purchaser to be paid for within a certain time is not a condition precedent to a right of action for the purchase price, but a separate and independent agreement.

Where a contract of sale is in writing, a warranty not expressed or implied by the terms that the article is fit for the particular use, cannot be added by implication.

When a known described and defined article is ordered of the manufacturer, although it is stated to be required for a particular use, there is no warranty that it shall answer the purpose intended by the buyer.

When a competent mechanic, while attempting to install machinery to be used in connection with a powerful motor, by error of judgment in an emergency does an act which causes damage to the property of the owner, his principal is not made liable by his act.

In the first action although the automatic governors which were of the usual make manufactured by the plaintiff proved unadapted for regulating the water speed and momentum applied to grinder units in the defendant's plant, but were shown to be identical with those specified in the contracts and recognized as the most accurate water wheel speed regulators of any make, fulfilling the warranties expressed in the contract, it is *held* that

there was no implied warranty that they should be suitable for the purpose intended.

In the second action it is shown that during the manipulation of the governor by the agent of the defendant while attempting to adjust it to the water wheel connected with a grinder unit the wheel case burst and the machinery and mill were damaged, but it is also shown that the action of the governor caused by the hand of the superintendent was not more sudden than its automatic action, that the water column upon which it acted was of extraordinary weight, and also that before the contract was made it was understood by both parties that the success of this kind of governor in connection with grinder units at the plaintiff's mill could be determined only by experiment, *held* that as the plaintiff corporation must have been as familiar as the defendant with all the conditions under which the attempt to adjust the governor was made, it assumed the risk of failure.

On report. Judgment for plaintiff in the first entitled action and for the defendant in the second entitled action.

The first suit was an action of assumpsit on account annexed, based upon a written contract, to recover the balance due and interest thereon for automatic water-wheel governors and other appliances sold and delivered by the plaintiff company to the defendant company. The writ also contained a count for "goods bargained and sold," also a count for "labor and materials," also an "omnibus count" of the common form, also a special count for interest, and also a count founded upon the written contract. Plea, the general issue.

The second suit was an action on the case brought as a cross action for the recovery of damages alleged to have been sustained by the plaintiff company named therein from the alleged insufficiency of the appliances which were the subject of the contract in the first action, and the alleged negligence of the defendant company in attempting to install the same. Plea, the general issue.

Both actions were tried together at the October term, 1903, of the Supreme Judicial Court, Cumberland County. After the evidence upon both sides in these two actions was concluded, it was agreed that both actions should be reported to the Law Court " for that court to pass upon and determine all questions of law and fact involved, including all questions of damages, and to order such judgments in the two cases as the respective rights of the parties may require."

The case appears in the opinion.

*Foster & Foster, and Joseph Bennett,* for Lombard Water-Wheel Governor Co.

*Symonds, Snow, Cook & Hutchinson, Charles F. Woodard, and William L. Quimby,* for Great Northern Paper Co.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

PEABODY, J. The first case under consideration is an action of assumpsit based on a written contract to recover $10,525.25, the alleged balance of the contract price of certain automatic water-wheel governors and other appliances sold and delivered to the defendant, and interest thereon to the date of the writ, $650, making a total of $11,175.25. The second is an action on the case brought as a cross action for the recovery of $25,000, damages alleged to have been sustained by the plaintiff from the insufficiency of the appliances which were the subject of the contract upon which the first action is based, and the negligence of the defendant in attempting to install the same in the plaintiff's mill. The two cases were tried together, as the same circumstances upon which the defense in the first action is founded formed the basis of the cross action, and they come before the law court on report.

The contract upon which the plaintiff company sues is in the form of a written proposal by it, dated at Boston, January 24, A. D. 1901, which was accepted in writing by the defendant company January 29, A. D. 1901.

The contract is as follows:

GREAT NORTHERN PAPER CO.,
    194 Washington St., Boston, Mass.

GENTLEMEN:— We submit the following proposal for water-wheel governing apparatus, to be used in connection with the four (4) grinder water-wheel units in your Millinocket plant.

The specifications, guarantees and agreements, under which we will furnish you the above governing apparatus are as follows:

APPARATUS. We will sell you four (4) of our type "B" gov-

ernors, and four (4) of our 23 " balanced relief valves, f. o. b. Boston, Mass., for the sum of Seven Thousand Six Hundred Dollars ($7,600.00). We will also furnish you with the connections necessary to go between said water-wheels and said governors, and the necessary connections for said relief valves, at the cost of the same to us.

GUARANTEE. The governors and relief valves furnished you under this proposal shall be of our regular standard make and quality, and any parts which develop inherent mechanical defects within two months from the time when they are put in operation will be replaced by us without charge.

These governors are guaranteed to give a more accurate speed regulation than any other make.

PURCHASE. In consideration of the above guarantee you hereby agree to purchase said governors and relief valves of us at the hereinbefore named price and to pay for the same and the costs of said connections in cash within one month of date of shipping documents. Also to pay for a man to erect and adjust said governors and relief valves at the rate of five dollars ($5.00) per day for his time, with his necessary traveling expenses added thereto in cash, when the work is done.

CONTRACT. This contract will not bind the Lombard Water-Wheel Governor Company until countersigned by its General Manager, and becomes void unless accepted by you within one month from the date first hereinabove written. The acceptance of this proposal by you within said time will constitute it a binding contract on both sides if so countersigned.

Yours very truly,

LOMBARD WATER-WHEEL GOVERNOR CO.,

by Allan V. Garratt, Chief Engineer.

Countersigned,

LOMBARD WATER-WHEEL GOVERNOR CO.,

by Henry A. Clark, General Manager.

We hereby accept the above proposal.

Jan. 29th, 1901.

GREAT NORTHERN PAPER CO.,

Garret Schenck, President.

It appears from the record that the goods were delivered according to the contract f. o. b. Boston, Mass., and were afterwards received by the defendant at its mill in Millinocket, Maine, that the articles were of the kind specified in the contract, that certain other articles expressly ordered by the defendant were also delivered, that the prices charged in the writ for all the goods were as specified in the contract, that the automatic governors referred to therein were of the standard type manufactured and sold by the plaintiff which were known to and had been used by the defendant, and were identical with the articles specified, that the type of governors was recognized as giving the most accurate speed regulation of any make of water-wheel governor in accordance with the guarantee, that bills of lading or railroad receipts were duly sent to the defendant but no payment except $30 on account was made within a month from the date of shipping documents. It further appears that a competent man was furnished by the plaintiff to set up the appliances in accordance with the contract, and that his services at the rate of five dollars per day and expenses amounted to the sum charged therefor in the account annexed. The report shows that the Millinocket plant has, as part of its mechanical construction, a feed pipe or penstock which brings the water from the head of the canal to a water wheel connected with a grinder unit. This feed pipe has a fall of about 110 feet and is about 1100 feet long and about 10 feet in diameter, and the water column in the flume weighs substantially 6,220,800 foot pounds, and when at working speed contains 222,600 foot pounds of momentum energy or 4,119 horse power. A serious accident to the defendant's mill occurred during the work of installing one of the governors to regulate this momentum.

The defendant denies liability on the three grounds following:

1. That it was not to pay for the governors and relief valves absolutely within one month from the date of shipping the same, but only upon the condition precedent that a suitable man to erect and adjust them was furnished by the plaintiff and that he completed his work within that month. This ground of defense cannot be maintained. The contract was one for a sale of certain goods and the title passed upon delivery to the defendant. This delivery was effected in

accordance with the terms of the contract by placing the goods on board the cars in Boston.   When a purchaser orders goods to be sent to him and delivered to a person named or to a common carrier authorized to receive them for his use it is a delivery to him and the sale and purchase are completed.   *Torrey* v. *Corliss*, 33 Maine, 333; *Wigton* v. *Bowley*, 130 Mass. 252; *White* v. *Harvey*, 85 Maine, 212. A contract for the sale of articles then existing or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not is a contract for the sale of goods.   *Goddard* v. *Binney*, 115 Mass. 450; *Mixer* v. *Howarth*, 21 Pick. 205.   The sale was unconditional and the undertaking of the plaintiff to furnish a man to adjust the governors was a separate and independent stipulation and not a condition precedent to recover for the price of the goods sold.

2.   That it was not liable upon the contract by reason of the negligence of the plaintiff in erecting and adjusting the governors and relief valves.   While there is some conflicting testimony tending to show unnecessary delay on the part of Mr. Avery, the man sent by the plaintiff to install the governors, the evidence does not establish the fact of negligence or incompetence on his part.

3.   That the contract was not fulfilled by the plaintiff because the automatic governor was not adapted to the purpose for which it was intended, and it claims that the contract contained an implied warranty that the governor apparatus should be suitable for the purposes of the defendant's plant, that it was the meaning of the specification in the plaintiff's proposal that the governors were to be used in connection with the four grinder units for the Millinocket mill, and that it therefore was the duty of the plaintiff to furnish apparatus safe and effective for the purpose and under the conditions for which it was to be used.   Leaving for later consideration the question of the suitability of the governors and all questions as to non-contractual obligations of the plaintiff it would be sufficient to say that the existence of this implied warranty as part of the contract is negatived by its explicit terms defining the guaranties of the plaintiff, by the fact that it contains express guaranties which by legal construction exclude all others, and by the fact that the goods sold

were articles such as the vendor in the ordinary course of his business manufactured for the general market. When a contract is in writing, an additional warranty not expressed or implied by its terms, that the article is fit for the particular use cannot be added by implication. *Whitmore et al.* v. *South Boston Iron Co.*, 2 Allen, 52; *Chanter* v. *Hopkins*, 4 M. & W. 399. Where an express warranty is made upon a sale no other will be implied. *Deming* v. *Foster*, 42 N. H. 165; *Dickson* v. *Zizinia et al.*, 70 E. C. L. 602; *De Witt* v. *Berry*, 134 U. S. 306; *International Pavement Co.* v. *Smith etc. Ma. Co.*, 17 Mo. App. 264; *Cosgrove* v. *Bennett*, 32 Minn., 371; *Shepherd* v. *Gilroy et al.*, 46 Iowa, 193; *McGraw et als.* v. *Fletcher*, 35 Mich. 104. Where a known described and defined article is ordered of the manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known described and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. *Chanter* v. *Hopkins*, supra; *Ollivant* v. *Bayley*, 5 Q. B. 288; *Prideaux* v. *Burnett*, 87 E. C. L. 613; *Seitz* v. *Brewer Refrigerating Machine Co.*, 141 U. S. 510. The rule deducible from the cases cited in support of this ground of defense is not applicable to a contract in which there seems to be no ambiguity in reference to the subject matter. Under these views of the case the plaintiff is entitled to recover $10,525.25, the amount specified in the account annexed, with interest from May 30, A. D. 1901.

This leaves for further consideration the two elements of the claim of the Great Northern Paper Company as plaintiff in the cross action, namely, that the injuries to its mill and machinery were due to the unsuitability and insufficiency of the appliances for the purpose for which they were intended, and to the negligence of the agents of the Lombard Water-Wheel Governor Company in their work of erecting and adjusting the governors.

The defendant, the Lombard Water-Wheel Governor Company after delivering the goods described in the contract to the plaintiff, the Great Northern Paper Company, sent Mr. Avery, one of its mechanics, to erect and adjust the governors and relief valves in the plaintiff's mill at Millinocket, and he proceeded to erect one of the

governors.    Two attempts were made to adjust it in connection with
the machinery which it was intended to control and regulate.    Dur-
ing the first trial several accidents happened to the machinery, and
particularly one of the grindstones connected with these governors
was broken.    At the second trial, after repairs had been made on the
machinery, the adjustment was attempted by Mr. Lombard at that
time superintendent of the Lombard Water-Wheel Governor Com-
pany, and during his manipulation and control of the governor in the
attempt to adjust it the water wheel case burst coincidently with a
sudden closing of the gate by the automatic governor.   A great
volume of water was released and the machinery and mill were
seriously damaged.

The plaintiff insists that the governing apparatus furnished by the
defendant was not adapted to the conditions existing at the mill, and
that in consequence of its special and technical knowledge of the
appliances manufactured by it and the reliance placed upon the
judgment of its engineers, it is responsible for the injury caused by
the insufficiency and unsuitableness of the governors and the
unsuccessful attempts to install them.    The absence of any further
attempt to install the governors or any instance of their successful
use in connection with grinder units, and particularly under the same
conditions as those prevailing at the Great Northern Paper mill where
the force to be regulated was water power of extraordinary character,
makes it difficult to decide with certainty as to the practicability of
this apparatus for the purpose required, but the weight of evidence,
particularly that in relation to the final accident to the water wheel
case, indicates that this automatic governor could be used under such
conditions only with great and constant risk, because from its sensitive-
ness and the changes of pressure on the grinder wheels it was liable
to shut and open the gate with great suddenness and subject the flume
to a violent strain from the enormous weight of unelastic water.
Apparently no safeguard could prevent a recurrence of the accident
which befell the wheel case.    It seems to have broken from no
inherent weakness but solely from the overwhelming pressure sud-
denly brought to bear upon it.    Assuming, however, that the plaintiff
in the cross action is correct in attributing the accident to the unsuit-

ableness of the device for the conditions which existed at the mill, the defendant cannot on this account be held liable, because the plaintiff's officers and engineers must have been entirely familiar with the water power at Millinocket and acquainted with the use of this type of governor in connection with other plants owned and operated by the company, and had equal knowledge of the risk of attempting to erect and adjust for that plant this particular speed regulator, and and the plaintiff is therefore presumed to have assumed the risk. It appears also that prior to the making of the contract the president of the Great Northern Paper Company enquired particularly of the agent of the Lombard Water-Wheel Governor Company regarding the use of this appliance in connection with grinder units, at which time it was definitely stated by the agent of the governor company that he could not tell how accurately the water-wheels driving the grinder could be governed, and that he could only guarantee that the governors would handle the wheels quicker than any other make of governor.

The conversation at this time indicates that the plaintiff and defendant both considered that the successful use of these governors in connection with the mill plant was a matter which could be ascertained only by experiment. Under these circumstances it cannot be considered that the Lombard Water-Wheel Governor Company assumed any obligation as to its governor appliances except those specifically stated in the contract. It has been already said that the evidence is not sufficient to charge the injury to the machinery during the first trial of the governor to negligence on the part of Mr. Avery. It is uncertain whether the accident to the grinders was occasioned by some movement of the governor itself or by an injury to the shaft of the water wheel existing before he took charge of the manipulation of this machinery. The greater weight of evidence, however, indicates that the governor had not been connected with the water wheel gates when the grindstone burst, and that Avery was not in the mill at the time.

But it is strongly contended by the plaintiff in this action, that the bursting of the water wheel case at the second attempt to adjust the apparatus was directly occasioned by the act of Mr. Lombard the

agent of the defendant in regulating by hand the movement of the governor and thereby causing the sudden closing of the gate. It appears however from his testimony, that the act referred to was done upon hearing a sound indicating the cracking of the water wheel case, and if so, it was after and not before the accident to the wheel case and did not probably contribute to the injury. Such an act, though it may now seem to have been injudicious, and may have contributed to the final result, if done in an emergency, as it appears to have been, according to his best judgment at the time, would not render his company liable; but it appears from the evidence that no manipulation of the governor could produce a quicker effect than its automatic action. This action cannot therefore be maintained.

In *Lombard Water-Wheel Governor Co.* v. *Great Northern Paper Co.* Judgment for plaintiff.

In *Great Northern Paper Co.* v. *Lombard Water-Wheel Governor Co.* Judgment for defendant.