### INTERSTATE TRUST & BANKING CO. et al. v. WEST TEXAS UTILITIES CO.

### No. 8137.

Court of Civil Appeals of Texas. Austin.
Dec. 4, 1935.

Critz & Woodward and J. B. Dibrell, Jr., all of Coleman, for appellants.

A. K. Doss, of Abilene, for appellee.

BLAIR, Justice.

Appellee, West Texas Utilities Company, sued appellant Coleman Office Company for the amount due on the purchase price of 184 electric fans and certain light fixtures as evidenced by a written contract, which, omitting formal parts, reads, as follows:

"As hereinafter stated, the Coleman Office Company, a corporation, promises to pay to West Texas Utilities Company or order, the sum of Three Thousand, One Hundred, Thirty-two and 04/100 ($3,132.-04) Dollars, with interest from this date until paid at the rate of seven per cent per annum for value received.

"This obligation is payable in monthly installments of Sixty-two installments, as follows: Sixty-one installments of $50.00, and a final installment of $82.04; the first installment payable on the 1st day of June, 1931, and subsequent installments on or before the first day of each month thereafter. * * *

"The West Texas Utilities Company will repair the fans in the building so that said fans will not leak oil into the bowl under the lights in connection with said fans.

"Failure to pay any installment herein provided for in this obligation·for a period of thirty days will authorize the West Texas Utilities Company at its option to declare all said installments due."

Appellee alleged that it had declared the entire obligation due under the acceleration of payment clause, and sought to establish and foreclose a constitutional materialman's lien on such fans and lighting fixtures. Other lienholders were made parties defendant.

All defendants, appellants here, answered,·alleging that appellee had breached its express contract agreement to repair the fans so as not to leak oil; that though often demanded and requested to do so, appellee had failed and refused to repair said fans; and that because of such defects the consideration therefor had wholly failed. Appellants also alleged that appellee agreed to install three speed fans, but instead installed one speed fans, and pleaded failure of consideration because of such defect. They further alleged that the fans were so attached to the ceilings that they could not be removed without material injury to the building; and that the liens of appellant lienholders were superior to the material-man's lien asserted by appellee.

The case was submitted to the jury upon special issues and upon their findings, less a remittitur of $184 filed by appellee, judgment was rendered in favor of appellee for $3,217.19; and for the foreclosure of the materialman's lien on the fans and light fixtures attached thereto.

█ Special issue No. 1 submitted the question of whether the fans and light fixtures attached could be "removed without damaging the structure of the building." The jury answered, "Yes." Appellants objected to the issue because the test was whether the fans could be removed "without material injury to the building." There was little, if any, dispute in the evidence, which showed that the removal of the fans· from their fastenings at the ceiling would not cause any material injury to the building. We are reversing the case on other grounds, but if on another trial the evidence should warrant it, the issue should be limited to material injury to the building as requested by appellants. J. D. McCollom Lumber Co. v. Whitfield (Tex.Civ.App.) 59 S.W.(2d) 1106, 1108, writ refused.

█ The trial court did not err in refusing to submit an issue to the jury as to whether appellee furnished one speed fans instead of three speed fans alleged to have been contracted for. Appellee's written bid, dated January 14, 1928, proposed to install "one speed fans." On the same day the bid was accepted and the one speed fans were later installed. Appellants therefore got what they contracted for. The undisputed evidence also showed that the fans had been installed and were in continuous use for about two years prior to the execution of the written contract in suit. So if there had been a breach of contract to furnish three speed fans, such breach was clearly waived by the acceptance, use, and retention of the one speed fans, and by the execution of the written promise to pay for them, with full knowledge of this alleged defect. C. Aultman & Co. v. McKinney (Tex.Civ.App.) 26 S.W. 267; Gutta Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 112 S.W. 1047; L. D. Powell Co. v. Sturgeon (Tex.Civ.App.) 299 S.W. 274; Martin v. Auto Finance Co. (Tex. Civ. App.) 25 S.W.(2d) 919.

Special issues Nos. 2 and 3, the court's instructions in connection therewith, and the jury's answers thereto read, as follows:

No. 2: "Do you find from a preponderance of the evidence that the plaintiff, West Texas Utilities Company failed to comply with its agreement in the contract of May 1, 1931, introduced in evidence, as to repairing said fans so as to stop the leak of oil? Answer Yes or No."

"Answer: 'No.' "

"You are instructed in connection with Special Issue No. 2, submitted herein that one compliance on the part of Plaintiff with said condition of repairing fans would operate in law to meet the condition, there being no duty imposed on the plaintiff to continue such service."

No. 3: "If you have answered Special Issue No. 2 'Yes', then answer the following issue:

"From a preponderance of the evidence what do you find to be the difference between the reasonable market value of said fans in the condition in which the same now are and what would have been the reasonable market value of said fans, if they had been so repaired by plaintiff? Answer in dollars and cents."

"Answer: $184.00."

Appellants objected to special issue No. 2 because it was so framed as to place the burden of proof upon them to establish by a preponderance of the evidence whether appellee "had failed to comply with' its agreement * * * as to repairing said fans so as to stop the leak of oil." Appellants contend that the contract should be construed as a single, indivisible one containing two elements; an obligation of appellant office company to pay for the fans, and the reciprocal and dependent obligation of appellee to repair the fans so as not to leak oil; and that the burden was therefore upon appellee to allege and prove that it had repaired the fans before it could recover the contract price for them. This contention is predicated upon the holding that "in an executory contract the general rule is that neither party thereto can demand nor enforce performance by the other, unless he shows that he has performed his part of the contract, or unless he shows not only his ability but his willingness to perform his part." Gober v. Hart, 36 Tex. 139, 140.

We do not sustain the contention. The contract contains two separate and independent covenants or obligations, as follows:

1. A promissory note, the obligation of appellant office company to pay appellee $3,132.04, with interest and in monthly installments, as consideration for the fans and light fixtures which had been installed in the building, and which had been in continuous use for almost two years prior to the execution of the contract.

2. A promise by appellee to repair the fans so that they would not leak oil into light bowls attached.

The contract to pay for the fans was for a definite sum and at a definite time after delivery of the fans. The provision to adjust or repair the fans was therefore a separate or independent stipulation or obligation, and not a condition precedent to a recovery of the purchase price of the fans. Appellee was only required to allege and prove the sum payable under the terms of the note. This is in accord with the holding in Smith v. Lipscomb, 13 Tex. 532, wherein the court say: "The rule applicable here as to covenants is, that where a day is appointed for the payment of a sum of money which is or may arrive before the time appointed for, or the performance of the act to be done in consideration of the money to be paid; then the covenants are mutual and independent, and the payee may maintain an action for the recovery of the sum promised to be paid, without averring performance on his side." See, also, C. Aultman & Co. v. McKinney, supra; Prairie Farmer Co. v. Taylor, 69 Ill. 440, 18 Am.Rep. 621; Lombard Water-Wheel Governor Co. v. Great Northern Paper Co., 101 Me. 114, 63 A. 555, 6 L.R.A.(N.S.) 180; 23 R.C.L. p. 1340, § 162, which hold in substance that an agreement of the seller of machinery or the like to adjust or repair the machinery or thing sold, payment for which is to be made at a certain time after delivery, is a separate and independent stipulation or obligation, and not a condition precedent to a recovery of the purchase price of the machinery or thing sold. In such cases an action is maintainable for the purchase price without averring full performance of the obligation to repair the machinery. In such cases the burden devolves on the buyer to allege and prove failure to perform the promise to adjust or repair the machinery or thing sold; his cause of action being one for damages for breach of the covenant, and, if established, the amount may be offset against the purchase price if unpaid; if paid, he may recover judgment for his damages.

We sustain the assignments and propositions of appellants predicated upon the action of the trial court in overruling their objections to special issue No. 2 and the instruction given in connection with it, as being confusing and upon the weight of the evidence and as placing an erroneous construction upon the contract with regard to repairing the fans so as not to leak oil.

Neither the special issue nor the instruction defined the term "repair," and the instruction that "one compliance" with the obligation to repair the fans would suffice did not properly define the word "repair" as used in the contract, and did not instruct the jury as to any question of law necessary to a proper answer to the issue submitted. The evidence was sharply conflicting as to whether appellee ever repaired the fans, and, if so, it was for

only such a short period of time as not to be noticeable. Nor did the evidence limit the effort of appellee to repair the fans, if it ever did so, to any particular time or occasion. It is therefore manifest that the special issue and instruction given in connection with it were necessarily confusing and misleading, and constituted a charge upon the weight of the evidence. The obligation to repair the fans so as not to leak oil was not limited to one compliance, unless the one compliance restored the fans "to a sound or good state, after decay, injury, delapidation, or partial destruction." Gulf City St. Ry. & Real Estate Co. v. City of Galveston, 69 Tex. 660, 663, 7 S.W. 520, 521; Martinez v. Thompson, 80 Tex. 568, 16 S.W. 334; Missouri, K. & T. Ry. Co. v. Bryan (Tex.Civ.App.) 107 S.W. 572; Automobile Underwriters of America v. Radford (Tex.Civ.App.) 293 S.W. 869; 54 C. J. 397–400; 3 Words and Phrases, Fourth Series, 362–364; 6 Words and Phrases, Third Series, 707–714; 4 Words and Phrases, Second Series, 272–276.; 7 Words and Phrases, First Series, 6096–6101. It is clear that the obligation of appellee to repair the fans so as "to restore to a sound or good state after decay, injury, delapidation, or partial destruction," was greater than that imposed by the court's instruction limiting the repair of the fans to one compliance or time. The question of whether the contract required one or more repairs of the fans was one of law for the court, and there was no occasion to instruct the jury as to this question of law in connection with the issue as to whether the fans had been repaired so as not to leak oil. A correct definition of the word "repair" as used in the contract was the only instruction necessary in connection with the issue submitted. The instruction given was clearly confusing and misleading and did not correctly define or limit the duty or obligation of appellee to repair the fans.

The trial court also erred in refusing appellants a new trial, because of the irreconcilable conflict between the answers of the jury to special issues 2 and 3, supra. The effect of the jury's answer to issue 2 was that appellee had repaired the fans in accordance with its agreement to do so. On the other hand, its answer to issue 3 found that it would require $184 to repair the fans in accordance with appellee's agreement to do so. The law is settled that a new trial must be "granted if the findings of the jury upon pertinent issues are so conflicting and irreconcilable that judgment can not be rendered thereon." 31 Tex.Jur. 60, § 53, and cases cited in note 8. The rule is stated in Speer's Law of Special Issues, p. 563, § 434, as follows: "The effect of a conflict of finding as to an essential fact is to destroy the efficacy of the findings as a verdict. Obviously a finding both ways upon a disputed issue is no finding at all. It has not even narrowed the inquiry, much less definitely settled it. The case begun with two versions of fact, was submitted as such, and the uncertainty of the verdict does not take it out of the realm of controversy. It has therefore settled nothing. The court cannot render judgment upon that which in law is nothing. The result is a mistrial. If a judgment is entered upon such conflicting findings a new trial should be granted."

It is true that the jury disobeyed the court's instruction not to answer issue 3, if it had answered issue 2 "No"; and it is also true that the appellee filed a remittitur of $184. The effect of this action of appellee and the court was to set aside or discard the jury's answer to issue 2, and give full credence to their answer to issue 3, although the court had instructed the jury not to answer issue 3, if it had answered issue 2 "No." In Speer's Law of Special Issues, p. 564, the rule in regard to this action of appellee and the court is stated, as follows: "The error of rendering judgment upon conflicting findings as to a material fact is more than the ordinary error, in this that it goes to the very right of the court to decide. It cannot therefore be so easily waived as other errors are. The duty to follow the verdict is mandatory in the statute, and therefore ordinarily not one to be waived by the parties, or the error such as may be invited."

In Radford v. Automobile Underwriters, 299 S.W. 852, the Commission of Appeals say: "The foundation of a judgment in a case wherein a jury intervenes is the verdict on material issues. The constitutional right of a trial by jury is not to be evaded in whole or given an attenuated strength through the device of giving actual effect to a verdict whose important terms are mutually destructive. Against these views plaintiff in error urges that the error was invited. Whether so, in truth, we do not consider, for the vice pertains to the power to render judgment (Van Valkenburg v. Ruby, 68 Tex. 139, 3 S.W. 746; Claiborne

v. Tanner's Heirs, 18 Tex. 68; Moore v. Moore, 67 Tex. 293, 3 S.W. 284), which is given by law and not by consent of the parties."

Whether the trial court could have disregarded the jury's answer to issue 3 as being in disobedience of its instruction is a matter on which we do not pass, because the trial court did not disregard the unauthorized answer or verdict of the jury to issue 3, but accepted it and rendered judgment in accordance with the jury's unauthorized answer to the issue. There is no law for curing conflicting answers of a jury to special issues in any such manner, but having thus recognized the conflict, it was the mandatory duty of the trial court to grant a new trial; because, as said in the Radford Case, supra, "the constitutional right of a trial by jury is not to be evaded in whole or given an attenuated strength through the device of giving actual effect to a verdict whose important terms are mutually destructive."

We overrule the various contentions of appellants with regard to the claim that appellant lienholders' liens are superior to appellee's materialman's lien, as well as all other contentions of appellants.

The judgment of the trial court will be reversed and the cause remanded.

Reversed and remanded.

BAUGH, J., not sitting.