PEOPLE ex rel. KELLY v. PUBLIC SERVICE COMMISSION, Second Dist.

(Supreme Court, Appellate Division, Third Department.   March 8, 1916.)

1. PUBLIC SERVICE COMMISSIONS ⬅6—POWERS AND FUNCTIONS.
   The Public Service Commission has such jurisdiction only as is given to it by statute.

2. RAILROADS ⬅9—REGULATION—PUBLIC SERVICE COMMISSION.
   Under Public Service Commissions Law (Consol. Laws, c. 48) § 2, subd. 6, defining "railroad," an elevator between the level of one street and that of another is not a railroad, within section 5, enumerating the public services over which the commission has jurisdiction.

   [Ed. Note.—For other cases, see Railroads; Cent. Dig. §§ 12–19; Dec. Dig. ⬅9.

   For other definitions, see Words and Phrases, First and Second Series, Railroad.]

3. CARRIERS ⬅10—REGULATION—"COMMON CARRIER"—"SUCH AGENCIES."
   Under Public Service Commissions Law § 2, subd. 9, defining a "common carrier" as including certain classes, and all persons operating "such agencies" for public use, an elevator between the level of one street and that of another is not a common carrier, within section 5, enumerating the services over which the commission has jurisdiction; "such agencies" meaning the agencies enumerated, and not other similar agencies.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 12, 14–20; Dec. Dig. ⬅10.

   For other definitions, see Words and Phrases, First and Second Series, Common Carrier; Such.]

Certiorari by the People, on the relation of John Kelly, to review an order of the Public Service Commission dismissing the relator's complaint against the American Real Estate Company for an unlawful discrimination in its rates of fare on an elevator operated by it. Writ dismissed, and order affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Greenbaum, Wolff & Ernst, of New York City (Edward S. Greenbaum, of New York City, of counsel), for relator.

Ledyard P. Hale, of Albany, for defendant.

HOWARD, J.   The American Real Estate Company owns, or did at one time own, most of the land on top of what is known as Park Hill in the city of Yonkers.   The New York Central Railroad runs along at the foot of this hill, and Undercliff street runs parallel with the railroad.   On top of the hill is Alta avenue, running also substantially parallel to the railroad.   From Alta avenue, on top of the hill, to Undercliff street, at the bottom of the hill, the slope is very steep, and in order to furnish easy communication between the settlement on top of the hill and the railroad and community at the foot of the hill the American Real Estate Company built and now operates an elevator between the two thoroughfares.   This was built primarily for the accommodation of the persons who live on the land purchased

from the Real Estate Company; but the company also receives and carries, on this elevator, any person who wishes to ride and who pays his fare. The elevator is built entirely on the land of the American Real Estate Company. Those who live in the houses built on the land of the company are styled by the company "residents," and all other persons are styled "nonresidents." The price of passage to "residents" is one cent, and the price of passage to "nonresidents" is five cents. John Kelly, who resides on top of the hill, but not on lands purchased from the Real Estate Company, attempted to purchase a ticket for one cent, but the company refused to sell him a ticket for that sum, and compelled him to pay five cents. He claims that this is a discrimination, in violation of sections 31 and 32 of the Public Service Commissions Law. Kelly made complaint to the Public Service Commission of the Second District, setting forth these facts, and asking the commission to put a stop to this discrimination. The commission has declined to interfere; holding that it has no jurisdiction over the subject-matter. Kelly brings the matter here by a writ of certiorari to review this determination of the Public Service Commission.

[1, 2] The Public Service Commission only has such jurisdiction as is given to it by statute. It cannot assume jurisdiction over common carriers and other enterprises and appliances simply because they are quasi public services. This elevator, or inclined railroad, however it may be styled, is private property devoted somewhat to a public use. But this is not enough to give the Public Service Commission jurisdiction, for many public services are concededly not within the jurisdiction of the commission. Section 5 of the Public Service Commissions Law enumerates the public services over which the commission has jurisdiction. Railroads and common carriers are included in this section, and the appellant contends first that this elevator is a railroad. It seems entirely clear to us that the Legislature did not have in mind any such apparatus as this, when the word "railroad" was used in section 5 of the Public Service Commissions Law. In subdivision 6 of section 2 the term "railroad" is defined as follows:

"The term 'railroad,' when used in this act, includes every railroad, other than a street railroad, by whatsoever power operated for public use in the conveyance of persons or property for compensation, with all bridges, ferries, tunnels, switches, spurs, tracks, stations and terminal facilities of every kind used, operated, controlled or owned by or in connection with any such railroad."

But this definition is incomplete, forcing us to fall back upon the ordinary definition of the word. Webster's definition meets the common conception. It is as follows:

"*Railroad.* A permanent road or way having a line or lines of rails fixed to ties or sleepers and laid to gauge, usually on a leveled or graded, ballasted road or roadbed, providing a track for freight cars, passenger cars or coaches, and other rolling stock designed to be drawn by locomotives or sometimes propelled by self-contained motors; hence, such a road or line together with all the lands, buildings, rolling stocks, franchises, and other assets pertaining thereto and constituting a single property."

While the foregoing definition does not cover every conceivable style of railroad, it seems quite plain that this mechanism in question

is in no sense a railroad. The appliance is not at all definitely described in the record, but the appellant himself in his complaint to the commission speaks of it always as an "elevator," and this is manifestly the correct name for this apparatus, built exclusively for lifting and lowering persons.

[3] But, even if it be an elevator, the appellant still contends that it is a common carrier at common law, and that the Public Service Commission has jurisdiction over it. We cannot concur in this view. Subdivision 4 of section 5 of the act gives the commission jurisdiction over "any common carrier." But "common carrier" is limited and defined in subdivision 9 of section 2 as follows:

"The term 'common carrier,' when used in this act, includes all railroad corporations, street railroad corporations, express companies, car companies, sleeping-car companies, freight companies, freight-line companies and all persons and associations of persons, whether incorporated or not, operating such agencies for public use in the conveyance of persons or property within this state."

In saying the term common carrier "includes" certain agencies, the Legislature must have intended to exclude all others; otherwise, the common-law definition would have been adopted, or, if the common-law definition were not quite sufficient, a list of agencies, in addition to the common-law common carriers, would have been sufficient. It must be held that the definition of "common carrier" excludes all those agencies not enumerated. The definition of "common carrier," quoted above, ends with this expression:

"Operating such agencies for public use in the conveyance of persons or property within this state."

It is argued that the words "such agencies" mean similar agencies, and is therefore broad enough to include this elevator. But the words "such agencies" refer, we think, to the preceding agencies enumerated in the definition and to no other agencies. The elevator in question not being one of the public services falling within the scope of the Public Service Commissions Law, it follows that sections 31 and 32 of the act have not been violated, and that the Public Service Commission has no authority to regulate the rates of fare charged by the American Real Estate Company, and has no jurisdiction over the elevator, or the American Real Estate Company. The writ should be dismissed, and the order affirmed.

Writ dismissed, and order affirmed, with $10 costs and disbursements. All concur.