## LANDES & CO. v. FALLOWS et al.

No. 5059.   Decided March 2, 1933.   (19 P. [2d] 389.)

*Leon Fonnesbeck,* of Logan, for appellants.

*Young & Bullen,* of Logan, for respondent.

EPHRAIM HANSON, Justice.

The plaintiff sued to recover the unpaid balance of the purchase price evidenced by a promissory note executed and delivered by the defendants in part payment of a second-hand Gleaner harvester with a Fordson engine, which were sold and delivered by the plaintiff to the defendants under a conditional sales contract, dated June 28, 1927. The plaintiff also prayed for a sale of the property, as upon the foreclosure of a purchase price lien. The buyer, by a recital in the contract, acknowledges receipt of the property in good order and condition; and the contract contains the provisions that "no warranties of any kind have been made by seller unless endorsed herein in writing over seller's signature." The defendants had previously given a signed order for the property, which provided that "the seller reserves the right to accept or reject this order." The defendants had, before signing the order, inspected the property, and knew its condition.

The trial was to the court and a jury. At the conclusion of the evidence the court directed a verdict for the plaintiff for the amount of the note with interest and attorney's fees, and it subsequently gave its complementary decision on the equitable issues in favor of the plaintiff, and judgment was entered for a sale of the property, and for any deficiency. The defendants appeal.

At the trial the defendants sought and offered to prove, by themselves and other witnesses, that, at the time the order was given, the plaintiff's agents orally agreed that the plaintiff would overhaul both the Fordson engine and the Gleaner harvester, and would replace the parts that were worn with new parts, and replace all 1926 bearings with roller bearings of the kind used on the 1927 model, all in

accordance with an enumeration of the items then made by the plaintiff's agents on a piece of paper, and which the defendants offered to prove that the plaintiff's agents stated would be pinned to, and made part of, the contract. The defendants sought and offered to prove, in the manner stated, the following matters: That the plaintiff failed and refused to make the repairs and replacements mentioned, that the Fordson engine was delivered with a defective governor, and that the main chain of the machine was lacking; that when the property was delivered and the contract and promissory note executed, the plaintiff's agent told defendants he would come back with the chain and the new parts and put the machine in condition and try it out in the field, but that he had failed so to do; that the machine was not in running condition, and that by reason thereof the defendants were unable to do the custom cutting which they had agreed to do, and thereby lost $375 profits, and were unable to cut their own grain, at a loss of $400, and, also, that by loss of time and the additional use of gasoline and oil they suffered a loss of $150, for all of which the defendants sought affirmative relief. The defendants also pleaded failure of consideration because of the defects above mentioned.

The court, on objection by plaintiff, excluded the proffered evidence, on the ground that it was an attempt to vary the terms of a written contract by parol; and these rulings on the admissibility of evidence are the only rulings of the trial court, covered by the assignments of error, which appellants have argued in this court. The proffered evidence was directed to affirmative defenses and counterclaims pleaded by the defendants; and in connection with the plea of defendants that, by reason of the defects in the harvester and the engine, the defendants could not use the same except at a great loss and expense in doing their own and custom harvesting, and they allege that at the time of the purchase of the property they made it known to plaintiff and its agents that they were purchasing it for the

purpose of harvesting their grain and the grain of others in their neighborhood; and, further, that "the plaintiff thereby warranted that the said machine was and that it would be put in good condition, and that said machine would cut and harvest grain and do the work for which the defendants purchased the same."

The evidence shows that the plaintiff was an agent for the Holt combined harvester, and that the Gleanor harvester in question was acquired by it in a transaction with a man named Woods, who, to defendants' knowledge, turned it over in part payment of a new Holt harvester. Prior to signing the order, the defendants accompanied plaintiff's agents to the Woods ranch in Salt Lake county for the purpose of inspecting the Gleaner harvester, and they inspected it and learned its condition. The order signed by the defendants was on a printed form intended specially for use in the sale of new Holt harvesters, and the warranties contained in it specifically referred to such and not to second-hand Gleaner or other harvesters. During the inspection of the harvester and engine, the plaintiff's agents, so the proffered testimony asserts, made notes of defects and needed repairs, and they agreed that these should be a part of the order. But later in the day, when the order was presented to the plaintiff's manager by the plaintiff's agents and by the defendants, and he was informed of the replacements and repairs promised, he struck out all warranty provisions in the order, and also the provision "that when it is accepted it will cover all agreements between the parties relative to this transaction," and advised the defendants that the company would not warrant the machine in any way. The evidence also shows that some time after the delivery of the property the plaintiff supplied defendants with a new governor for the engine, and that the defendants, at the commencement of harvesting, secured a main chain for the machine from the Hyrum Elevator.

In his argument in this court appellants' counsel ignores the conditional sales contract which was executed at the

time of the delivery of the property and upon which the plaintiff has founded its suit. He argues that

"it is appellants' contention that Exhibit C (the order) does not express the entire agreement or understanding of the parties, and, that being true, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to matters not provided for or embodied in the contract";

and, further:

"It is also our contention that the court erred in excluding the testimony showing the defective condition of the harvester as the same was delivered, and also that the company failed to put the same in running condition; these facts went to show a failure of consideration. It is our position that the parol evidence rule does not prevent the obligors from showing that the consideration for entering into the agreement has failed."

Counsel seeks to turn to the account of the appellants the circumstance that plaintiff's manager struck from the order the provision that, "when it is accepted it will cover all agreements between the parties relative to this transaction," by saying: "This was stricken out by the company's manager, Mr. Landes. Why? Because the note paper was attached showing the items of new parts and repair, which the parties had orally agreed upon." In support of this statement he quotes 22 C. J. 1147, that "parol evidence is admissible to aid an inference which may be deduced from a written instrument." And he finally argues that "under our uniform sales act there was an implied warranty that the machine was fit and would do the work for which it was purchased."

The able counsel for the defendants does not give us the advantage of his reason nor of his investigations, if any, as to why the conditional sales contract, referred to in the record as Exhibit A, which appears to have been executed when the harvester and Fordson engine were delivered to the defendants, should not be given some consideration in this investigation. We think it is the determinative feature of this controversy. If it were con-

ceded that the order for the property was not such a completely expressed contract as precludes the existence of parol warranties (55 C. J. 705-709, and notes; *Long* v. *Five-Hundred Co.*, 123 Wash. 347, 212 P. 559), it is evident that the conditional sales contract completely covers the same subject-matter as the order, and that it consequently merges or supersedes the order. 55 C. J. 252, 253, § 223; *Hercules Powder Co.* v. *Campbell Sons Co.*, 156 Md. 346, 144 A. 510, 62 A. L. R. 1497.

The evidence of any promissory warranties made by respondent's agents to the defendants was properly excluded by the trial court. The conditional sales contract having superseded the order, and the contract purporting on its face to be a complete expression of the whole agreement, that contract merges in it prior written, as well as oral, negotiations. 55 C. J. 705-709, § 696; *Hercules Powder Co.* v. *Campbell Sons Co.*, supra; *Anderson* v. *International Harvester Co.*, 27 Ga. App. 533, 109 S. E. 417. The conditional sales contract in this case contained the provision that, "No warranties of any kind have been made by seller unless endorsed herein in writing over seller's signature," but the rule above stated would have been equally applicable if the contract had been silent upon the subject of warranty. *Bayer* v. *Winton Motor Car Co.*, 194 Mich. 222, 160 N. W. 642. The application of the rule to a case like this is well illustrated in *Anderson* v. *International Harvester Co.*, supra. In that case the court held that, unless the instrument should expressly or by implication provide otherwise, a vendor is bound by his promise made at the time a purchase-money note is renewed, whereby he agrees to remedy existing defects, or to warrant a then undelivered portion of the purchased property, "still, under the rule stated, such promises and warranties cannot be enforced, if, in order to do so, it is thereby necessary to add to or vary any of the terms of the agreement, such as are covered by and embodied in the written instrument."

438

In this case there was no implied warranty that the machine was fit for and would do the work for which it was purchased, as argued in appellants' brief. The nonwarranty clause of the contract precludes such a warranty. Moreover, there is no warranty of fitness where the buyer orders a specific article for a specific purpose known to the seller. *Davenport Ladder Co.* v. *Hines Lumber Co.* (C. C. A.) 43 F. (2d) 63; *Sturtevant Co.* v. *Le Mars Gas Co.*, 188 Iowa 584, 176 N. W. 338. In *Hopkinsville Motor Co.* v. *Massie*, 228 Ky. 569, 15 S. W. (2d) 423, it was held that where there is an express stipulation that property sold is not warranted, warranty will not be implied; and, in the same case it was held that where a written contract provided there was no warranty, express or implied, in a sale of a tractor, the buyer could not predicate a defense to an action on a note for a part of the purchase price, on an oral warranty given before the execution of the contract, or on an implied warranty that the tractor was suitable for the purpose for which it was sold. And the cases to that effect are numerous. 55 C. J. 729, § 707. Where goods are sold on inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold, and no others, shall be delivered. 55 C. J. 717, § 704; *Downey* v. *Price Chemical Co.*, 204 Ky. 98, 263 S. W. 690. And in such case, the buyer must protect himself by a special, or promissory, warranty against known or visible defects; which would naturally be the seller's agreement to repair them, so that the machine will do good work. 55 C. J. 701, § 693.

It may be that the defendants' obligation to pay was subject to the implied condition of a full delivery of the harvester and engine, including the main chain referred to. *Parker* v. *Funk*, 185 Cal. 347, 197 P. 83; *American Soda Fountain Co.* v. *Dean Drug Co.*, 136 Iowa, 312, 111 N. W. 534. But they did not defend on the ground of such a breach of the contract. They secured a chain from the Hyrum Elevator, and their only damage on this

account was the cost of the chain. If it can be said that there was any uncertainty or ambiguity in the contract in question, it was in the description of the subject-matter. It is probable that the machine included the chain in question, as words of description will generally include such property as may fairly and reasonably be regarded as falling within such description. If, on the other hand, the contract of sale specifically designates the subject-matter of the transaction, such designation must control and cannot be enlarged by construction. 55 C. J. 221, § 176. In note 42 to that section, it is said:

"Also, in the absence of a representation that the article is complete, the sale of a second-hand safe does not necessarily include the key to it."

The inclusion of the key in that case, and the main chain in this, would be a matter of intention; and, certainly, if the main chain were attached to and a part of the machine when the defendants inspected it, the chain would be a part of the subject-matter of the contract, unless there were an understanding to the contrary. The defective governor apparently was a part of the engine at the time of the inspection and purchase, and there is no evidence or offer thereof showing that it was the duty of the plaintiff to replace it, although the company apparently did so.

The property was not worthless; consequently a failure of consideration is not shown. *Tucker* v. *Traylor Engineering & Mfg. Co.* (C. C. A.) 48 F. (2d) 783; *Grant* v. *White,* 26 Ga. App. 121, 105 S. E. 626. In *Grant* v. *White,* supra, it was held:

"In a seller's action for the price of a secondhand lighting plant, evidence held to authorize the inference that the failure of the plant to function properly was due to a defect which could be remedied, and that the property was not without any value whatever as a lighting plant."

This is especially true in a case where, as in this case, there was no implied warranty of fitness.

We find no error in the proceedings here complained of, and the judgment of the district court is affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and MOFFAT, JJ., concur.