VALLEY REFRIGERATION COMPANY, Appellant, VS. LANGE COMPANY, Respondent.*

*February 9—March 9, 1943.*

* Motion for rehearing denied, with $25 costs, on May 18, 1943.

For the appellant there was a brief by *Martin, Clifford & Dilweg,* attorneys, and *Lloyd O. Warne* of counsel, all of Green Bay, and oral argument by *Mr. Warne.*

For the respondent there was a brief by *Smith & Smith* of DePere and *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *J. R. Kaftan.*

WICKHEM, J. ` On March 20, 1941, plaintiff, a dealer in refrigeration machinery, executed a written contract with defendant, owner of a cold-storage plant, by the terms of which plaintiff agreed to sell and to install in defendant's plant certain refrigeration equipment to be paid for by instalments. Defendant corporation had for many years engaged in the manufacture and sale of patent medicines. Until about a year prior to the making of the contract defendant had never been engaged in the cold-storage business. It then installed refrigeration equipment of low capacity in its plant. On January or February of 1941 defendant was approached by an association of fishermen who offered defendant a contract to freeze and store their smelt catch for 1941, estimated to run between four hundred thousand and five hundred thousand pounds of smelt. Plaintiff held its officers and employees out as trained refrigeration engineers, and had advised defendant prior to the time of sale, exacting a fee for such advice. Defendant, through its manager, communicated with plaintiff, disclosed its negotiations with the producers of the smelt, and what would be required of defendant. Plaintiff was asked for an assurance that defendant's plant, after installation of the purchased machinery, could handle the refrigeration of a smelt run up to four hundred thousand to five hundred thousand pounds. (The usual period of a smelt run is ten days.) Defendant produced testimony, and the jury found, that this

assurance was specifically given. The written contract for the sale of the equipment contains the following provisions which are claimed to be material in this case:

"Guarantees

"We guarantee first-class material and workmanship for one year from the date when the equipment is first put in operation. In the event that material furnished by us shall prove to have been defective at the time it was furnished, natural wear and tear, misuse and accident excepted, we agree to repair or furnish a duplicate of any such part free on board cars at factory within such period.

"No liability shall attach to us, however, for damages or delays caused by defects, beyond making such repairs or furnishing duplicate parts, nor shall we be liable for any defective material repaired or replaced without our consent."

The schedule descriptive of the machine sold reads in part:

"1—6x6 Ammonia machine, used but guaranteed to be in good operating condition running at 277 R. P. M. and producing 5.88 tons of refrigeration at 5 pounds suction pressure and 155 pounds discharge pressure requiring 14.8 B. H. P."

The contract also contains the following provision:

"This document contains the entire proposed agreement between the parties hereto. It is understood that there are no agreements, promises, or understandings other than those incorporated in this proposal in printed or written form."

The machine was to be completely installed by April 15, 1941. Demand for the use of the plant to freeze and store fish began to come in earlier than this, however, and on the 11th, 12th, and 13th of April, one hundred fifty-eight thousand pounds of fish came into the plant. The plant was unable to handle this quantity of fish and seventy-eight thousand two hundred pounds smelt spoiled. Defendant was compelled to pay the owners of this fish at the rate of three cents per pound

and the cost of hauling the fish away from the plant. There is evidence that plaintiff consented to receiving fish prior to April 15th, although there is a conflict as to the amount of fish that plaintiff consented to receive. While this conflict was not submitted to the jury it must be considered resolved against plaintiff by operation of sec. 270.28, Stats.

Defendant's counterclaim was the only matter contested upon the trial. It is for damages, (1) for breach of warranty; and (2) for fraud. The case was tried and decided upon a theory that there was a breach of implied warranty of fitness for a disclosed purpose. Sec. 121.15 (1), Stats., Uniform Sales Act, provides in substance that where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. Sec. 121.15 (6) also provides that an express warranty does not negative a warranty or condition implied under this act unless inconsistent therewith.

Defendant claims that this is an instance where a buyer has disclosed the purpose for which the machinery is required, relied upon the seller's skill or judgment, and therefore, by operation of law, has the benefit of an implied warranty that the goods are reasonably fit for the purpose disclosed. Were it not for considerations hereinafter to be discussed we should have some doubt whether the term "fitness," as that term is used in the statute, in connection with implied warranties is applicable to the present situation. We would suppose that a warranty of fitness has to do with the intrinsic qualities and characteristics of the property sold. As, for example, in *Bird & Son v. Guarantee Construction Co.* (1st Cir.) 295 Fed. 451, where it was held that there was an implied warranty that certain carrier equipment which was the subject of a sale

would be reasonably fit for conveying products in a plant without damaging them. In all cases that we have had a chance to examine, fitness for a purpose has to do with the design, materials, and other qualities of the thing sold. Here, the term "fitness" is sought to be extended to the capacity of plaintiff's machine in combination with refrigeration already on defendant's premises to handle a specified quantity of fish during the fishing season. It is not denied that the machine sold here was well built, intrinsically capable of refrigerating fish, and of producing the tonnage of refrigeration warranted by the written contract. The claim is rather that it did not sufficiently augment the capacity of defendant's plant. We do not find it necessary to do more than to express these doubts because, in any event, we are not dealing here with an implied warranty. Plaintiff made an express oral representation that the equipment sold, when used in combination with defendant's existing plant, would refrigerate a specified amount of a specified product within the specified time. Nothing was left to implication. If this had been a case of implied warranty, evidence concerning it would not be in violation of the parol-evidence rule because the warranty is created by law and not by the parties' agreement. *Bekkevold v. Potts,* 173 Minn. 87, 216 N. W. 790. The warranty could only be negatived by inconsistent express warranty or condition in the written contract of sale. Sec. 121.15 (6), Stats. The question is whether evidence of the representation may be introduced without violation of the parol-evidence rule in the face of a provision in the written contract of sale that there are no agreements, promises, or understandings other than those incorporated in the writing. It is clear from the entire contract, including this clause, that the writing was intended to integrate all agreements relative to the sale itself, and this would include all those concerning the qualities, tendencies, and capacities of the equipment sold. The real difficulty is caused

by confusion concerning the nature and effect of oral representations preceding the sale. According to the English law, and to some of the American cases prior to the Sales Act, a representation is not a warranty unless it "appears from evidence to have been so intended" by the person making it. *Pasley v. Freeman,* 3 T. R. 51. According to sec. 121.12, Stats., Uniform Sales Act, however, "any affirmation of fact . . . by the seller relating to the goods is an express warranty if the natural tendency of such affirmation . . . is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." Thus, a mere representation, unaccompanied by any of the promissory features necessary under the old law, is a warranty, and this being true, it is possible to contend that the warranty superimposed upon the representation is the creature of the law and not of mutual agreement by the parties, and that such warranties are admissible without violation of the parol-evidence rule for the same reason that implied warranties or fraudulent representations are admissible. See note, 39 Harvard Law Review, 642. While there is considerable conflict in the authorities, a majority of cases appear, however, to have taken the view that such representations are not admissible under the parol-evidence rule, even in the absence of express warranties or disclaimers in the written contract of sale. *Federal Co. v. Tompkins,* 149 Ark. 664, 231 S. W. 553; *Case Threshing Machine Co. v. Copren Bros.* 32 Cal. App. 194, 162 Pac. 647; *Rowe v. Emerson-Brantingham Implement Co.* 61 Mont. 73, 201 Pac. 316; *White, Ward & Erwin v. Hager,* 112 Tex. 516, 248 S. W. 319; *Remsberg v. Hackney Mfg. Co.* 174 Cal. 799, 164 Pac. 792; *Stoehrer & Pratt Dodgem Corp. v. Greenburg,* 250 Mass. 550, 146 N. E. 34; *Appalachian Power Co. v. Tate,* 90 W. Va. 428, 111 S. E. 150; *Northwestern Blaugas Co. v. Guild,* 169 Wis. 98, 171 N. W. 662. By the great weight of authority, as it appears to us, where the contract itself con-

tains a disclaimer of any warranties other than those specifically set forth in the writing or a statement that the writing contains the entire contract between the parties, oral warranties based on representations made during the negotiations may not, in the absence of fraud, be admitted, and even implied warranties are excluded. *Leonard Seed Co. v. Crary Canning Co.* 147 Wis. 166, 132 N. W. 902; *Potter v. Shields,* 174 Mich. 121, 140 N. W. 500; *Reynolds v. General Electric Co.* (8th Cir.) 141 Fed. 551; *Guhy v. Nichols &· Shepherd Co.* 33 Ky. Law, 237, 109 S. W. 1190; *Sullivan Machine Co. v. Breeden,* 40 Ind. App. 631, 82 N. E. 107; *Laitner Plumbing & Heating Co. v. McThomas* (Kansas City Court of Appeals), 61 S. W. (2d) 270; *Marmet Coal Co. v. People's Coal Co.* (6th Cir.) 226 Fed. 646; *Seitz v. Brewing Co.* 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; *Huntington v. Toledo St. L. & W. R. Co.* (6th Cir.) 175 Fed. 532, 99 C. C. A. 154; *Union Selling Co. v. Jones* (8th Cir.), 128 Fed. 672, 63 C. C. A. 224; *Power Co. v. Crane Co.* 208 Ill. 218, 70 N. E. 319; *Hamilton Iron & Steel Co. v. Groveland Mining Co.* (6th Cir.) 233 Fed. 388. See also notes, 59 A. L. R. 1219; 75 A. L. R. 1080; 127 A. L. R. 160. The disclaimer clause in this case does not specifically exclude other warranties but it does provide that the writing contains all of the agreements between the parties, and that there are no other understandings or promises. Further than this, the written contract does contain express warranties. Where the contract in express terms declares that it completely integrates the negotiations and understandings of the parties, express warranties founded on nonfraudulent representations may not, under the parol-evidence rule, be admitted. This conforms to the weight of authority and to the purposes of the parol-evidence rule. To exclude an express warranty which fully satisfies the English rule because of its promissory elements, and to admit mere representations because their

standing as warranties is given them by operation of law, creates a distinction which, in our judgment, has no practical basis, whatever theories may be advanced in support of it. This is all the more true when warranties, agreements, and understandings other than those set forth in the writing are specifically disclaimed by the written contract.

For the foregoing reasons, we are of the view, (1) that the facts of the case disclose no implied warranty; and (2) that under the parol-evidence rule the express oral warranty sought to be proved is inadmissible by reason of the parol-evidence rule.

The second cause of action on the counterclaim is based upon fraud. We discover no evidence of *scienter*. The case was evidently not tried upon the theory of fraud. It follows that judgment must be reversed and defendant's counterclaim dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss defendant's counterclaim and to grant judgment to plaintiff for the balance due upon the contract of sale.