### FAIRBANKS, MORSE & CO. v. CONSOLIDATED FISHERIES CO.

Civ. No. 1221.

District Court of the United States
D. Delaware.

Oct. 25, 1950.

Memorandum for Order.
Nov. 20, 1950.

James R. Morford and Edward W. Cooch, Jr., (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., for plaintiff.

S. Samuel Arsht (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., and Leonard J. Schwartz, and J. Victor O'Brien (of Fox, Rothschild, O'Brien & Frankel), of Philadelphia, Pa., for defendant.

LEAHY, Chief Judge.

The present motion for summary judgment involves plaintiff's first cause of action on 29 promissory notes for $48,140.00 plus interest and counsel fees, out of a total of 36 similar notes all of which have matured. Failure of consideration is the defense. The 36 notes for $59,760.00 were part payment of a diesel engine and generating equipment purchased by defendant under a contract of January 8, 1948. The alleged failure of consideration results be-

cause this equipment was not the kind of equipment which plaintiff had expressly agreed to deliver to defendant. There is a claim for breach of warranty in that (Answer): "At the time of the purchase of the equipment the plaintiff represented and expressly and impliedly warranted that the equipment was fit for the purpose for which the equipment was purchased by the defendant, that is, for the generation and supply of electric power in varying quantities as and when required by the defendant up to 1136 kilowatts. Contrary to the representations and to the express and implied warranties, the equipment, by reason of its inadequate and faulty design and construction, did not and does not now satisfactorily develop electric power in varying quantities up to 1136 kilowatts as required by the defendant."

Defendant, filing a counterclaim asserting an affirmative cause of action against plaintiff arising out of the same facts, alleges the equipment sold and delivered by plaintiff to defendant "by reason of the inadequate and faulty design and construction, did not and can not now produce electric power in the amount required by defendant from time to time up to 1136 kilowatts." Because of the alleged breach of warranty, defendant claims damages in the amount that it paid on account of the purchase price and certain special damages.[1]

Plaintiff has moved for summary judgment on the first cause of action and on defendant's counterclaim. The pertinent portions of the contract between the parties are in three parts and are set forth in the margin.[2] Defendant says the equipment

1. The counterclaim demands repayment of $48,819.00 on account of the purchase price; freight and unloading charges of $2,178.75; $38,856.69 spent in the erection of foundations for installing the equipment; and $18,000.00 estimated expense defendant will incur in removing the equipment bought by defendant.

2. Namely (1) General Engine Proposal, (2) Standard General Provision of Diesel Engine Sales, and (3) Specification No. One. The clauses of the contract material to plaintiff's motions are—

General Engine Proposal

"4. The obligations and guaranties

which the Company assumes are solely those specifically set forth in the General Provisions with respect to replacement of guaranteed parts found within one year to have been defectively manufactured, determination of capacity at factory tests, and operation at a test of not to exceed Two eight-hour days conducted pursuant to the applicable General Provisions, when properly installed, at 25 feet above sea-level, according to the following Guaranties of Duty: Fuel Guarantees;

"The consumption of approved fuel is as follows: Full Load, .370 lbs. per BHP

was described briefly in the Proposal as follows:

per hour; Three-Fourths Load, .390 lbs. per BHP per hour; One-Half Load, .450 lbs. per BHP per hour. The rates are subject to a tolerance of 3 percent, and are based on operation at altitudes up to 1500 ft. above sea level, temperature of not to exceed 90° F. and a heating value of not less than 19,350 BTU (high value) per pound."

\* \* \* \* \* \* \*

"6. As more specifically set forth in the General Provisions, the Company, shall, in no event, be liable for consequential damages, however caused, or be accountable or liable in any manner for damages or otherwise with respect to the purpose, suitability, or operation of the machinery or delays from causes not within its full control (including fires, labor difficulties, governmental restrictions, delays of supplies, but without excluding other causes) or be in anywise liable or accountable beyond its express agreements hereinbefore set forth or expressly incorporated herein."

"7. This proposal, in duplicate, shall become binding on the Purchaser and the Company, when signed by the Purchaser and approved by the local manager of the Company and shall thereby become the entire and sole agreement of the parties pertaining to the subject matter hereof, mutually withdrawing, cancelling, or otherwise waiving, terminating and excluding any and all oral, written, express, or implied representations, guaranties, warranties, agreements, or understandings whatsoever not set forth in full herein or in the General Provisions or Specifications made a part hereof as aforesaid."

It will be noted that defendant does not claim any breach by plaintiff of the specified "Guaranties of Duty" of paragraph 4 above.

Standard General Provisions

II.C.—Test for Successful Operation According to Guaranties of Duty:

"(1) The Company makes no guaranty or Warranty of operation or efficiency except such 'Guaranties of Duty' as may be stated in the proposal, which, if stated, are expressly limited strictly to successful operation according thereto of the machinery when properly installed, at a test to be conducted promptly after completion of the erection of the machinery and only if requested by the Purchaser at or before such completion. If such test is not requested by the Purchaser,

"1—1420 KVA—1136 KW at 80% P.F. 3 Phase 60 cycle, 2400 volt, 720 RPM Direct Connected Generator".

or if, for any reason, other than the fault or neglect of the Company or its Engineer, such test is not properly conducted promptly as aforesaid, all Guaranties of Duty shall be null and void, and the Purchaser shall give to the Company's Engineer or other representative, on demand, a written acceptance of the equipment as properly fulfilling the requirements of the contract.

\* \* \* \* \* \* \*

III. Guaranty of Material and Workmanship:

"The Company guarantees that the machinery manufactured by it which it proposes to furnish hereunder will be well made, of good material and in a workmanlike manner, and that if, within one year from the date of shipment thereof, any guaranteed part should fail because of defective material or workmanship in the manufacture thereof and specific written notice of such failure be given the Company within such time, the Company shall replace such defective part, free of charge, F.O.B. cars its factory; provided, that, at the option of the Company, parts claimed to be defective shall be returned to the Company's factory for inspection, with all transportation charges thereon prepaid by the Purchaser. All guaranties and warranties with respect to machinery apparatus, accessories, materials, or supplies not manufactured by the Company shall be limited to the respective guaranties or warranties of the manufacturers thereof. The Company shall not be liable for any repairs or alterations except those made with its specific written consent and approval and shall not be liable for damages or delays, whether caused by defective material or workmanship or otherwise; and it is expressly agreed that all liability of the Company with respect to such machinery, or its use or operation, including that under any and all guaranties or warranties, whether express or implied, is strictly limited to the replacement, in the manner aforesaid, of guaranteed parts failing, within the time hereinbefore stated, by reason of defective material or workmanship in the manufacture thereof.

\* \* \* \* \* \* \*

VI. Extent of Company's Liability

"It is expressly understood and agreed that the Company shall in nowise be deemed or held to be obligated, liable, or accountable upon or under any guaranties or warranties, express or implied, statu-

And in Specification No. One the Generator is described as: "1—1420 KVA—1136 KW at 80% Power Factor, 3 Phase, 60 Cycle, 2400 Volt, 3 wire, 720 RPM, 50° Rated Fairbanks, Morse Alternator with Sole Plates, Rheostats and Field Discharge Resistor".

Defendant interprets the quotes to mean plaintiff, by the terms of the agreement, had agreed to deliver equipment "for the generation and supply of electric power in varying quantities as and when required by the defendant up to 1136 kilowatts" and claims that by reason of its inadequate and faulty design and construction, the equipment did not and does not satisfactorily develop electric power in varying quantities up to 1136 kilowatts.

The contract further provides the plaintiff-seller shall not be obligated, liable or accountable upon any guaranty or warranty, express or implied, statutory or otherwise, "in any manner or form beyond its express agreements relative to the determination of the capacity of each Diesel engine at the factory test, the determination of successful operation of the machinery at a specified test, and the replacement of defective guaranteed parts, all hereinbefore specifically set forth." After delivery and installation defendant accepted the equipment in accordance with the terms of the contract. This acceptance by defendant is found as follows:

"Consolidated Fisheries Company
Manufacturers of Fish Products
Lewes, Delaware
 "June 19, 1948
"Fairbanks Morse & Co.
 New York City
"Gentlemen:—
 "This is to advise that 1600 HP Generator and Engine have been installed and are operating in a satisfactory manner and personnell instructed in its operation
 "Very truly yours
 "Consolidated Fisheries Co.
 "R. C. Hayes"

A close reading of the record in the case at bar fails to disclose that notice of any kind was ever sent by defendant to plaintiff to the effect that the equipment purchased by defendant did not meet the claimed requirements. Certain it is that no such notice is pleaded, relied on or contained in any writing before me. Defendant, however, admits giving the acceptance but says it was given in reliance upon representations made by a certain employee of plaintiff and that in any event the acceptance is not material to the issue in this case. The defense and counterclaim asserted by defendant is not based on any implied warranty. On the contrary, defendant argues plaintiff's undertaking is an express warranty to deliver equipment which will produce "1136 KW at 80% P.F. 3 Phase."

On the basis of the facts, plaintiff claims, however, it is entitled to summary judgment because defendant is relying upon

tory, by operation of law, or otherwise, in any manner or form beyond its express agreements relative to the determination of the capacity of each Diesel engine at the factory test, the determination of successful operation of the machinery at a specified test, and the replacement of defective guaranteed parts, all hereinbefore specifically set forth; and that to such end the Company shall in nowise be held liable for any damages whatsoever arising out of or in connection with the purpose, use or operation of the equipment or resulting from delays occasioned by causes not fully within its full control (including, among other such causes, fires, strikes, labor difficulties, delay in procuring materials, or governmental restrictions), the receipt of the equipment on arrival shall constitute a waiver of all liability or claims for delay, and in no event whatsoever shall the Company ever be liable for consequential damages, or in any measure beyond the reasonable cost of the rental of similar machinery for the period of any delay."
 Specification No. One
 Specification No. One merely describes the equipment and adds special terms not here pertinent.

warranty of fitness of the equipment to deliver up to 1136 kilowatts and such reliance is rendered unavailing by the express terms of the contract between the parties where it deals with both implied and express warranties. Plaintiff also urges that the representations supposedly made by Anderson [3] and the statements made in connection therewith according to Hayes, are irrelevant to any issue of the case for the purpose of plaintiff's motion, and even if they were relevant they, too, would be rendered unavailing under the express terms of the contract as well as the parol evidence rule. Plaintiff argues that the guaranties and warranties specifically assumed and made exclude any such warranty as urged by defendant, whether it be express or implied, not so assumed by plaintiff as shown by the other clauses of the contract—in particular, General Engine Proposal, par. 4, 6, and specifically par. 7, which provides the proposal shall become "the entire and sole agreement of the parties pertaining to the subject matter thereof" * * * *"*mutually withdrawing, cancelling, or otherwise waiving, terminating and excluding any and all oral, written, express or implied representation, guaranties, warranties, agreement or understandings whatsoever not set forth in full herein or in the General*

*Provisions or Specifications made a part hereof.*" (Emphasis supplied.)

Finally, plaintiff points out that regardless of whether there was a breach by it which might be said to constitute failure of consideration, still defendant was under a duty to give notice to that effect to plaintiff within a reasonable time after installation and operation and since defendant has failed to give notice within a reasonable time its present defense is totally unavailing.

Defendant's single contention, as stated before, is that it does not rely at all on any theory of implied warranty, but that there has been a failure of consideration because the equipment delivered failed to comply with the express terms of the agreement. In so claiming it says whether the equipment did comply with the agreement raises a material fact issue and that consequently the motion for summary judgment should be denied. After reviewing the entire record before me I cannot accept this view. I conclude plaintiff's motions for summary judgment should be granted.[4]

■ 1. There are, at bottom, two questions. The first is whether the plaintiff-seller did warrant the equipment to develop "up to 1136 KW" by implication of law.[5] Here, the contract not only specifi-

---

3. In explaining the acceptance of the equipment, Hayes, President of defendant, states that at the time the acceptance was given, plaintiff knew through its engineer Anderson that the equipment was not in good operating order.

4. There is some doubt whether the law of Illinois, New York or Delaware controls. This is because the place of contracting or the place of performance may be considered as Illinois, the domicile of plaintiff, New York, the place of plaintiff's office where the notes were payable, or Delaware, the place of defendant's domicile and place of installation of the purchased equipment. The matter, however, is academic because each of the States mentioned has a Uniform Sales Act. Illinois, Laws 1915, p. 604, Smith-Hurd Ann. St. Ch. 121½, §§ 1–77; New York, Laws 1911, Ch. 571, McKinney's Consol.Laws, c. 41, Personal Property Law, §§ 82–158, Delaware, Revised Code, 1935, §§ 5980–6058.

5. The law appears settled that where parties to a sale have by express terms negatived all implied warranties the buyer cannot claim an implied warranty that otherwise might have been available. Minneapolis Threshing Machine v. Hocking, 54 N.D. 559, 209 N.W. 996; Sterling-Midland Coal Co. v. Great Lakes Coal & C. Co., 334 Ill. 281, 165 N.E. 793.

To the same principle, see Ford Motor Co. v. Culloma, 5 Cir., 96 F.2d 1, certiorari denied 305 U.S. 627, 59 S.Ct. 89, 83 L.Ed. 401; Modern Homes Utilities v. Garrity, 121 Conn. 651, 186 A. 639, 640; Kennedy v. Cornhusker Hybrid Co., 146 Neb. 230, 19 N.W.2d 51, 160 A.L.R. 351; Valley Refrigeration Co. v. Lange Co., 242 Wis. 466, 8 N.W.2d 294, 298; O. S. Stapley Co. v. Newby, 57 Ariz. 24, 110 P.2d 547; Chiquita Mining Co. v. Fairbanks Morse & Co., 60 Nev. 142, 104 P.2d 191, 196; Jones v. Love, 67 Ga.App. 594, 21 S.E.2d 254.

cally states it is "the entire and sole agreement of the parties" but also expressly and positively excludes implied warranties [6] in at least six instances: (a) General Engine Proposal, Paragraphs 4, 6 and 7; and (b) Standard General Provisions, Paragraphs II C (1), III and VI. In this respect, Pargaraph II C (1) which relates to "Test for successful operation according to Guaranties of Duty" appears vital for it states "The Company (plaintiff) makes no guaranty or warranty of operation or efficiency except such Guaranties of Duty as may be stated in the Proposal * * *", which,

it is clear, relates to fuel guaranties. Moreover, the oral representations alleged to have been made by plaintiff's engineer Anderson at the time defendant accepted the installation and operation of the equipment are not relevant to the issue presented here for such allegations,[7] appearing in the Hayes affidavit, even if material, must be ignored as incompetent and not admissible evidence under both the express terms of the contract of sale and the parol evidence rule. The acceptance of the equipment, on the other hand, was itself a part of the written contract [8] and contemplated as such

6. In a like manner, implied warranties are excluded by an express stipulation in the contract to sell providing in effect that there shall be no warranties, either express or implied. Bridgeport L. A. W. Corp. v. Levy, 110 Conn. 255, 147 A. 841, 845; Oldfield v. International Motor Co., 138 Md. 35, 113 A. 632, 636; Minneapolis Threshing Machine Co. v. Hocking, supra; O. S. Stapley Co. v. Newby, supra; Chiquita Mining Co. v. Fairbanks Morse & Co., supra; Jones v. Mallon, 3 Wash. 2d 382, 101 P.2d 332; Rockwood & Co. v. Parrott & Co., 142 Or. 261, 19 P.2d 423, 426–427; Landes & Co. v. Fallows, 81 Utah 432, 19 P.2d 389, 391-2; see also annotation to Hill & MacMillan, Inc. v. Taylor, 304 Pa. 18, 155 A. 103, 75 A.L.R. 1022 at page 1080.

While the authorities are not completely harmonious, some authorities go so far as to hold that warranties implied by law are negatived and excluded by stipulation to the effect that the writing contains the entire contract of the parties. Lombard Water-Wheel Governor Co. v. Great Northern Paper Co., 101 Me. 114, 63 A. 555, 6 L.R.A.,N.S., 180; Lasher v. Laberge, 125 Me. 475, 135 A. 31; Sterling-Midland Coal Co. v. Great Lakes Coal & C. Co., supra; McCabe v. Standard Motor Const. Co., 106 N.J.L. 227, 147 A. 466, 467; Valley Refrigeration Co. v. Lange, supra; see the cases collected in the annotation to Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 791, in 59 A.L.R. 1164 at page 1219; and also compare cases in annotation to Sperry Flour Co. v. DeMoss, 141 Or. 440, 18 P.2d 242, 90 A.L.R. 422.

See also City of Moultrie v. J. S. Schofields Sons Co., 6 Ga.App. 464, 65 S.E. 315, where it was held that a buyer was precluded from relying on an implied warranty that the boiler would develop a certain horsepower, in view of the stipulation in the contract that the warranties

therein contained included all the warranties made by either party.

See also the cases annotated at 127 A. L.R. at p. 160-163, note VII(b); as pointed out in the introductory note to Section VII of the annotation, the cases on this point are varied and numerous, and generally turn on the phraseology of the contract. See also the cases annotated 133 A.L.R. 1349, 1364, note VII (b).

7. Where the written contract, upon inspection, shows a complete legal obligation, without any uncertainty of obligation, parol evidence is not admissible to prove an express warranty which is not contained in the writing. Sterling-Midland Coal Co. v. Great Lakes Coal, etc. Co., 334 Ill. 281, 165 N.E. 793; Boston Consol. Gas Co. v. Folsom, 237 Mass. 565, 130 N.E. 197; Star Fuse Co. v. Prussian, 248 Mass. 126, 143 N.E. 145; Aetna Chemical Co. v. Spaulding & Kimball Co., 98 Vt. 51, 126 A. 582; Northwestern Blaugas Co. v. Guild, 169 Wis. 98, 171 N.W. 662; Blecker v. Schmidt, 211 Iowa 1063, 235 N.W. 34; Barry v. Cronin, 272 Mass. 477, 172 N.E. 595; Demos Const. Co., Inc. v. Service Supply Corp., 153 Pa. Super. 623, 34 A.2d 828; Valley Refrigeration Co. v. Lange Co., 242 Wis. 466, 8 N.W.2d 294.

8. By the same rule, where the written agreement specifically excludes and negatives implied warranties, parol evidence is not admissible to establish an implied warranty, and to vary or contradict the express terms of the written agreement. While implied warranties may be proved by parol evidence, yet if the parol evidence seeks to establish an implied warranty, specifically negatived and excluded by the express terms of the written agreement, it should be excluded under the parol evidence rule as inadmissible and incompetent to vary or contradict the

by the parties; hence, it cannot be varied or altered by alleged parol statements made prior to the time the acceptance was given. Defendant failed to request a test then, as it could have under Paragraph 11(c) 1 of the Standard General Provisions and thus, it seems to me, it waived any guaranty of duty.[9] That particular paragraph, by its specific terms, provided "If such a test is not requested by the Purchaser, or if, for any reason, other than the fault or neglect of the company or its Engineer, such test is not properly conducted promptly as aforesaid, *all Guaranties of Duty shall be null and void, and the Purchaser shall give to the Company's Engineer or other representative, on demand, a written acceptance of the equipment as properly fulfilling the requirements of the contract."* (Emphasis added.)

Again, I am unable to adopt defendant's view that the *description* of the equipment is an express warranty that it will deliver up to 1136 KW. A warranty arising from description is not an express warranty.[10] Any distinction between implied and express warranty has merely academic interest here for, as stated above, the contract between plaintiff and defend-

ant by its specific terms withdraws, cancels, waives, terminates and excludes "any and all * * * express, or implied * * * warranties" except those actually assumed.

2. The second of the two questions upon which this case rests may now be stated. It is not important in answering this question to determine whether the issue raised is one of express or implied warranty because in either event I think plaintiff's position is sound even if we assume, as we must for discussion here, that plaintiff violated an express or implied condition of the contract in delivering the equipment and even if we assume that the representations made by an employee of the plaintiff were material and binding on plaintiff. This is true because on the record before me defendant gave no notice that the equipment failed to meet the standards which it claims the contract required. § 49 of the Uniform Sales Act requires a buyer under such circumstances to give notice within a reasonable time.[11] The defendant-buyer in the case at bar has given no notice that the equipment sold will not deliver up to 1136 kilowatts; on the contrary, in fact, it gave a receipt that the equipment had been installed and was op-

---

terms of the written agreement. See 46 Am.Jur., Sales, §§ 315 and 333.

It would appear provisions of the kind contained in the instant contract are thoroughly valid and competent, and the parties may, by express agreement, limit their rights, duties and obligations arising thereunder, by the terms of the contract. See Tharp v. Allis-Chalmers Mfg. Co., 42 N.M. 443, 81 P.2d 703, 117 A.L.R. 1344, at page 1350 and annotation "Validity of provision of contract of sale of personal property negativing implied warranties" and the cases cited therein; and 46 Am.Jur., Sales, §§ 335, 336; Deere & Webber Co. v. Moch, 71 N.D. 649, 3 N.W.2d 471, 139 A.L.R. 1270.

9. In fact, the above principles are implicit in § 71 of the Sales Act, Del.Rev.Code 1935, § 6050, which provides as follows: "Variation of Implied Obligations:— Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such

as to bind both parties to the contract or the sale."

10. This would appear clear from § 14 of the Sales Act, Del.Rev.Code 1935, § 5993, which speaks of, by way of heading, "Implied Warranty in Sale by Description". Apart from the Sales Act there is early authority that no warranty of any kind arises from mere descriptive language. Budd v. Fairmaner, 8 Bing. 48, 131 Eng. Rep. 318; Richardson v. Brown, 1 Bing. 344; Anthony v. Halstead, 37 LT (NS) 433; Willard v. Stevens, 24 N.H. 271.

No Delaware case on this precise point has been found, but the provision of Delaware's Sales Act (§ 14) does recognize an *implied* warranty arising from descriptive language.

11. § 49 of the Uniform Sales Act, Del.Rev. Code 1935, 6028, § 78, provides in part: " * * * But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

rating "in a satisfactory manner". A representative number of cases in support of the Sales Act to the effect that a buyer must notify the seller within a reasonable time of functional deficiency are set forth in the margin.[12] The purpose of § 49 of the Sales Act is quite apparent; it is to prevent the buyer from raising belated claims when he is faced with suit by the seller for a purchase price that has not been paid.[13] The ratio behind the legislation and its cases is that since it would be difficult to determine the validity of the buyer's defense against the purchase price or its counterclaim for damages at a late date, it seems reasonable to require prompt action on the part of the buyer, especially when there is every expectation that prompt action would normally follow an articulation of dissatisfaction by buyer.

 Of course, what constitutes a reasonable time generally depends—as it does in the law in all "reasonable time" situations—upon the facts and circumstances of the particular case.[14] Looking at the circumstances creating the particular situation here it appears thirteen months elapsed between the date of acceptance (June 19, 1948) of the installation and operation of the equipment and defendant's answer alleging the breach of warranty (July 20, 1949) and its affirmative counterclaim for substantial damages. There is no averment by affidavit or otherwise which shows plaintiff ever received following the written acceptance of the equipment any notice of breach of warranty as now found in the answering pleadings. A buyer who accepts goods then seeks a remedy for breach of warranty must plead and prove he gave the required notice within a reasonable time.[15] I think it clear, as a matter of law, defendant did not, in the case at bar, act within a reasonable time; and consequently no useful purpose would be served by testimony on this particular question. In making this ruling I may and have assumed that defendant's acceptance letter is not relevant against defendant; and I have also assumed that plaintiff's employee did make material representations to defendant.

Plaintiff's motions for summary judgment will be granted.

### Memorandum for Order

 This suit was submitted by the parties to the court for determination on plaintiff's motion for summary judgment. Extensive briefs were filed and, after consideration of the documentary record before it, the court filed its memorandum opinion on October 25, 1950, in which it held that summary judgment should be awarded plaintiff and against defendant. Before judgment was actually entered in plaintiff's favor, defendant filed its motion to amend its answer and counterclaim. The effect of the proposed amendments was to introduce a new theory of defense with a concomitant new theory of recoverable damages by defendant on its proposed amended counterclaim. While the present motion is not to amend after judgment entered (due to the fortuitous circumstance here that formal judgment was not,

12. Rothenberg v. Shapiro, Sup., 140 N.Y.S. 148; Regina Co. v. Gately Furniture Co., 171 App.Div. 817, 157 N.Y.S. 746, affirming, Sup., 154 N.Y.S. 888; Sorenson v. S. A. Companhia, etc., Sup., 180 N.Y.S. 201; McMurray v. Vaughn's Seed Store, 117 Ohio St. 236, 157 N.W. 567; Jan Ree Frocks, Inc., v. Pred, 68 S.D. 356, 2 N.W.2d 696.

13. "The purpose of this section, indeed, seems apparent, viz. to prevent the buyer from interposing belated claims for damages (too often a mere afterthought) as an offset to a suit begun by the seller for the purchase price." Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S.W. 984, 986.

14. The question of time may present a question of fact but the question may also be decided by the Court where the facts permit but one conclusion. See 3 Williston, Sales, § 484A, pp. 39-40; and for what is not a reasonable time see Uniform Laws Annotated, Sales Act, pp. 292-95 and Supp. pp. 233-38.

15. See note 12.
See annotations to § 49 of the Uniform Sales Act supporting the rule that a purchaser has neither a right of action for breach of warranty nor a defense to an action for the purchase price unless the required reasonable notice provision has been met. Vol. I, Uniform Laws Annotated, Sales Act, pp. 289-290.

in fact, entered after the filing of the court's memorandum opinion in plaintiff's favor) nevertheless, the effect of the proposed amendments is to reopen the case and relitigate the question of defendant's liability. True, Rule 15, Fed.Rules Civ. Proc. 28 U.S.C.A., provides that "leave shall be freely given (to amend) when justice so requires" and courts, in general, have shown a "strong liberality in allowing amendments under Rule 15(a);" nevertheless, the action of a court permitting such amendments is based on the court's discretion and this cannot be an unbridled discretion. The parties in the case at bar in forming the proposed issues submitted the case for decision on the theory of a buyer-seller contract with a resultant breach of warranty on plaintiff's part and in defendant's favor in connection with the sale of goods.

 The case was taken under advisement, studied, and decided, i. e., that judgment should be for plaintiff for the payment of the purchase price of the goods by defendant. The concept of "negligence" on plaintiff's part was nowhere in the record, hinted at or suggested. Now, after losing its case defendant shifts its position and proposes amendments alleging an action sounding in tort, bottomed on a charge of negligent conduct on the part of plaintiff. An amendment to an answer which adds a new defense is not allowed when the defense itself would be insufficient. Canister Co., Inc. v. National Can Corp., D.C.Del., 6 F.R.D. 613; and see 3 Moore's Federal Practice (2d ed.) 834. The theory of the court's memorandum opinion awarding judgment to plaintiff and filed herein on October 25, 1950, was that plaintiff by its contract with defendant had limited and eliminated its liability in connection with the sale of the goods in suit. This limitation is broad enough to cover any negligence in performing its obligations under that contract. For a discussion of this lack of dual liability in a contract for the sale of goods where the parties have so stipulated, see Judge Kirkpatrick in Charles Lackman Co. v. Hercules Powder Co., D.C., 79 F.Supp. 206. This would appear to be sound law, otherwise in a con-

tract for the sale of goods a defendant might successively and by way of defense repeatedly seek several bites at the legal apple; for example, first defending in a suit for the purchase price on an alleged breach of the contract itself, on an alleged breach of warranty, and after failure at both switch to some alleged negligence on the part of plaintiff in the performance of its obligations under the contract. In the case at bar, the contract is comprehensive enough, it seems to me, to exclude the liability which is now sought to be imposed upon plaintiff by defendant's proposed amendments to its answer and its counterclaim, after it has been already decided that plaintiff should have judgment on its motion for summary judgment for the purchase price of the goods sold to defendant. Accordingly, the proposed amendments should be denied and an appropriate order submitted.